MICHAEL G. WHEAT
546437

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
SEP 28 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                         DEPUTY

UNITED STATES OF AMERICA

Plaintiff,

v.

CRAIG KEVIN TALIAFERRO

Defendant.

Case No. 18MJ5114

**C O M P L A I N T**
Title 21, U.S.C., Sec., 841(a)(1) and 846
- Conspiracy to Distribute Hashish Oil;

The undersigned complainant being duly sworn states:

Beginning at a date unknown and continuing up to and including September 11, 2018, within the Southern District of California, and elsewhere, defendant CRIAG KEVIN TALIAFERRO, did knowingly and intentionally conspire with other persons known and unknown, to distribute hashish oil containing tetrahydrocannabinols, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Sworn to before me and subscribed in my presence, this 28TH day of September, 2018.

JOHN GIESON, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence, September 28, 2018.

BERNARD G. SKOMAL
United States Magistrate Judge

1

## Statement of Facts in Support of Complaint

I, John Gieson, being duly sworn, declare under penalty of perjury that the following statement is true and correct:

## Training and Expertise

I am a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7) that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

I am employed as special agent with the Drug Enforcement Administration and have been so employed for 20 years. During this time, I have investigated illicit controlled substance trafficking in San Diego and surrounding areas. I have had formal training and experience in controlled substance investigations and I am familiar with the manner in which controlled substances, including marijuana and marijuana derivatives are manufactured, packaged, marketed and consumed. Your affiant has the following relevant training, qualifications, expertise, experience and background. I have received training in the identification of all types of controlled substances by sight and odor, including marijuana. I have participated in hundreds of arrests for controlled substances violations. In the course of my employment, I have become familiar with the ordinary meaning of controlled substance slang and jargon, and I am familiar with the manners and techniques of traffickers in controlled substances as practiced locally, including those organizations whose operations involve the distribution of wholesale quantities of cocaine, methamphetamine, heroin and marijuana. I have served or assisted in the service of over 100 search warrants wherein all types of controlled substances, including marijuana, and marijuana THC extraction laboratories were seized. In January 1999, I completed a 17-week Basic Agent's School at the DEA Academy in Quantico, Virginia, which included training in the manufacture, cultivation, distribution, and abuse of all types of controlled substances. In April 2000, I completed the 2-week

2

Clandestine Laboratory Investigation Course at the DEA Academy in Quantico, Virginia, which was conducted by DEA. I have received more than 100 hours of instruction in conducting indoor/outdoor cannabis investigations. I have served as DEA's San Diego Field Division, Domestic Cannabis Eradication/Suppression Program Coordinator, responsible for coordinating the marijuana eradication efforts in San Diego and Imperial Counties. I have personally assisted in the eradication of more than 300,000 marijuana plants.

I have conducted and participated in numerous controlled substance investigations including, but not limited to, those connected with (1) unlawful manufacture, to include clandestine marijuana concentrated cannabis (THC) extraction laboratories and importation, possession with intent to distribute, sales and distribution of controlled substances, (2) the conducting of monetary transactions involving the proceeds of unlawful activities and (3) conspiracies associated with controlled substances offenses in violation of Federal and state of California Health and Safety Code. In conducting those investigations, I have used a variety of investigative techniques and resources, including physical surveillance, search warrants, undercover operations, and the use of cooperating individuals.

This affidavit is intended to show that there is probable cause for the requested complaint and does not purport to set forth all of my knowledge of the investigation of this matter. All dates and times are best approximations.

Butane Hash / Honey Oil (BHO) Manufacturing

Butane hash oil or honey oil (BHO) is typically a waxy, oily substance, usually yellow in color. It can be vaporized ("dabbed"), with the use of electronic cigarettes and other vaporizing devices, allowing the user to inhale the concentrated active tetrahydrocannabinol (THC). It is also easy to add to foodstuffs, creating "edibles" (or so-called "medibles" in the medical marijuana context), or solidified to make concentrated forms of cannabis known as "wax."

BHO can be made using a number of different processes, as described below. Butane is highly flammable, odorless, colorless and heavier than air. Once released, it can seep into low-lying areas and sit there for a period of time. When sufficiently concentrated, any spark or other ignition source can cause a significant explosion. Butane comes in canisters that contain the gas in a pressurized and compressed fashion. This means that if a primary explosion occurs during the process, any unused butane canisters nearby can cause serious secondary explosions.

As this activity has spread over the last year or so, there has been a veritable epidemic of explosions, both in San Diego County and across the country. Since January 2018, law enforcement has responded to at least 17 hash oil labs in San Diego County (three of which had fires and or explosions). Most of the explosions result in property damage as well as serious injuries and the occasional fatality. While most of the people injured are the participants themselves, there have been a number of instances where innocent bystanders (including children) have also been harmed.

In fact, SD County HAZ-Mat and SD Fire Haz-Mat crews participated in the execution of the search warrants discussed below.

INVESTIGATION OF MANUFACTURING AND DISTRIBUTION OF BHO

During the course of my duties, I have learned the following information from reading the reports prepared by other agents/officers or I have spoken with the victim or witnesses directly. All dates refer to the current calendar year and all times refer to Pacific Standard Time (PST) unless specified otherwise.

In May of 2018, I interviewed a DEA Confidential Source (CS) who told me the following information: The CS is acquaintances with Sean Zigler, who is known to the CS, along with his brother Bryan Zigler (charged elsewhere) and others unknown, to operate three clandestine concentrated cannabis (marijuana) extraction laboratory locations, and one processing/packaging location. The CS was able to view and observe one of the three clandestine concentrated cannabis extraction locations at 9870 Marconi Drive, Suites A & B, San Diego, California. This

4

location is a commercial building containing suites A-F. The CS has learned this information from being inside units A & B on numerous occasions over the last three months as well as from talking with Sean Zigler. Bryan Zigler and Sean Zigler have been

Regarding the interior of 9870 Marconi Drive, Suite A, the CS has observed four separate extraction systems being utilized to manufacture concentrated cannabis. These systems, manufactured by Xtractor Depot, have the ability to hold 40 pounds of marijuana each, resulting in the manufacturing of up to 4 pounds of concentrated cannabis per extraction run. In addition, these systems are operating simultaneously in a sequential order so as to continuously manufacture concentrated cannabis. The CS observed the concentrated cannabis was being extracted utilizing a solvent blend of propane and butane. The CS further observed and learned the operation to be staffed by at least 4-5 people per shift, consisting of two shifts per day.

In investigating Xtractor Depot, I learned it is a company that manufactures and distributes a closed loop system utilizing a liquid hydrocarbon, such as propane or butane, as the primary solvent to extract oils and certain compounds from plant material. Commercial botanical oil extraction applications are designed to extract and collect the concentrated botanical compounds and essential oils from organic material for use in such industries as the production of commercial food flavoring (e.g., vanilla), cosmetics, and fragrances.

However, based on my investigation, other law enforcement investigations, and various social media outlets, Xtractor Depot extractors are primarily being utilized to manufacture concentrated cannabis (commonly referred to as hashish, honey oil, wax, and shatter, to name a few). Concentrated cannabis extraction functions on the solubility of the cannabinoids. Tetrahydrocannabinol (THC) is one of many cannabinoids found in the marijuana plant and is targeted for extraction. In cannabis concentrate extraction, solvents are the chemicals used to dissolve the cannabinoids contained in the resin glands of the cannabis plant. As the solvents

5

pass through the plant material, they carry any dissolved plant oils to a collection vessel where the separated oils can be isolated. The preferred hydrocarbon solvent used is N-Butane. Butane dissolves organic oils very effectively and evaporates at room temperature leaving the desired targeted THC cannabinoid behind.

I further know that this method of manufacturing concentrated cannabis utilizing a solvent chemical such as N-butane and propane to extract the THC cannabinoid from the cannabis [marijuana] is extremely dangerous. Solvents like butane and propane, which I believe are being used to extract the THC from the marijuana, are highly flammable, and when used in confined spaces, the solvent fumes become concentrated and easily combustible. DEA and other law enforcement agencies throughout the United States, to include San Diego County, are increasingly responding to clandestine concentrated cannabis laboratories utilizing volatile solvents like butane and propane that have caused explosions and serious bodily injuries.

Regarding the interior of 9870 Marconi Drive, Suite B, the CS stated that the suite consists of one large open space, an office space, and a loft. The open space was being used to store large amounts of bulk marijuana contained within black trash bags. In June 2018, during one of the CS's visits to suite A&B, the CS estimated there to be approximately 1,000 pounds of marijuana in Suite B. This marijuana was then brought into Suite A as needed to manufacture the concentrated cannabis.

I believe the CS to be credible and reliable for the following reasons. The CS had been under investigation by the DEA and subsequently arrested and plead guilty to possession of marijuana with intent to distribute, in violation of title 21, U.S.C., Sec. 841(a)(1); and felon in possession a firearm in violation of title .18, U.S.C., Sec. 922(g)(1). The CS is currently awaiting sentencing and has agreed to cooperate with law enforcement. No promises were made to the CS in exchange for this cooperation other than the amount and degree of his cooperation would be made known to the prosecutor, who may then be inclined to recommend some kind

6

of sentencing consideration. The CS understands that the sentence is within the sole discretion of the sentencing judge. DEA has not made and will not make any representation as to what sentence the CS will receive. Despite the pending sentencing, I believe the CS's information is accurate because I have been able to investigate and independently corroborate the information that the CS gave me. Furthermore, prior information received from this CS has resulted in four arrests and the seizure of approximately 20 pounds of methamphetamine.

I know that in order to obtain a California State Commercial Cannabis Activity License, the California Medicinal and Adult-Use Cannabis Regulation and Safety Act requires that the licensee first obtain a license, permit, or other authorization from the local jurisdiction, and not to violate the local jurisdiction's regulations or ordinances.

On July 9, 2018, I spoke with a City of San Diego Code Enforcement officer who told me the City of San Diego does not have a Conditional Use Permit/license listed at 9870 Marconi Drive, Suites A & B, as no conditional use permits have yet been given out.

On August 9, 2018, I learned from a City of San Diego Development Service employee that on February 13, 2018, an individual submitted a General Application form seeking approval for a Conditional Use Permit for the address of 9870 Marconi Dr, Suite A-G, San Diego. The project description is listed as follows: "This project will consist of processing a Conditional Use Permit for the proposed conditional use of cultivating, producing, manufacturing, and distributing marijuana products." I further leaned that a City of San Diego Conditional Use Permit is applied for by whole building/lot/parcel number and not individual suite numbers. I have since learned this Conditional Use Permit pertains to Suites F&G and not A&B.

I then spoke with a San Diego Police Department Detective who specializes in marijuana enforcement who told me that, at this time, the City of San Diego does not allow permits for the manufacturing of concentrated cannabis utilizing volatile

7

solvents such as butane, and that this is still considered a felony within the City of San Diego.

Records obtained from San Diego Gas & Electric [SDG&E] indicate the utility service at 9870 Marconi Drive, Suites A & B, each contain two separate service accounts [meters]. Suite A contains two separate meters listed as A & A1, and likewise Suite B has two separate meters, B & B1. All four meters are subscribed to CRAIG TALIAFERRO:

Suite A, meter A service activated on September 21, 2017.
Suite A, meter A1 service activated on September 21, 2017.
Suite B, meter B service activated on September 29, 2017.
Suite B, meter B1 service activated on October 1, 2017.

Execution of Search Warrant at 9870 Marconi Drive, Suites A & B, San Diego, CA 92154

On September 11, 2018, DEA agents executed court-authorized search warrants at the above locations, which revealed it served as a concentrated cannabis manufacturing site. Suites A & B had been modified and connected by an opening between the shared wall of Suites A & B, as well as a second story cat walk. The following is a partial list of items seized from the concentrated cannabis manufacturing site operating 5 large industrial extraction systems [Xtractor Depot models], 48 kilograms of raw concentrated cannabis, 3,662 kilograms of marijuana, (4) 5' Butane tanks, 11 smaller Butane tanks, and a clandestine indoor cultivation operation consisting of 928 marijuana plants in various stages of growth. Part of the marijuana cultivation operation extended into the second story of Suite C. The second story of Suite C was only accessible from a catwalk and door from within Suite B. The door from Suite C leading to the first floor of Suite C was locked from within the second story of Suite C.

On this same day a DEA agent spoke to the owner of the building who informed the agent CRAIG TALIAFERRO was the current renter of Suites A & B & the second story of Suite C. The further stated CRAIG TALIAFERRO does not have a signed rental agreement and rents on a month to month basis paying in cash.

CRIAG TALIAFERRO told the owner the purpose of the rental space was to process marijuana and that CRAIG TALIAFERRO was waiting for the marijuana regulations to be legal. The owner provided rental invoices and a payment history that reflects the following:

- From October 1, 2017 through February 1, 2018, TALLIAFERRRO rented Suite A - $3,000 per month and Suite C - Second Floor $2,200 per month.
- From March 1, 2018 through August 1, 2018 TALLIAFERRO rented Suites A - $3,000, Suite B - $3,000, and Suite C - Second Floor $3,000.
- Total Rent owed = $81,000.00 Total Rent payed = $76,060.00

The owner further provided CRAIG TALIAFERROS address as 5030 Windsor Drive, San Diego 92109 and cell phone number of (541)517-6611.

## CONCLUSION

Based on my training and experience, the above factors lead me to believe that CRIAG TALIAFERRO was involved in a conspiracy to manufacture, and the distribution of BHO and marijuana.